serious thrombotic and cardiovascular side effects of Vioxx ingestion;

n.  Defendant negligently failed to provide adequate post-marketing warnings or instructions after the Defendant knew or should have known of the significant risks of personal injury and death as identified herein among other serious side effects from the use of Vioxx;

o.  Defendant negligently failed to warn Plaintiff that Vioxx should not be used in conjunction with any risk factors for these adverse events such as a family history of ischemic heart disease, or risk factors for ischemic cardiovascular disease; and,

p.  Defendant negligently failed to warn Plaintiff that they undertook the risk of adverse events and death relating to Vioxx as described herein

70.  The Defendant's acts of negligence, as described above but not limited to these specific acts, proximately caused the Plaintiff's injuries and the occurrence in question.

WHEREFORE, Plaintiff prays for judgment against Defendant in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for Plaintiff's costs herein expended.

## COUNT 3- NEGLIGENCE- SALE OF PRODUCT-
## AGAINST MERCK

COMES NOW Plaintiff and for Count Three of the Complaint against Defendant Merck, alleges:

71.  The Plaintiff re- alleges and incorporates the foregoing allegations.

72.  Defendant, during some or all relevant times, manufactured, sold, marketed, and/ or distributed Vioxx that was supplied to the Plaintiff for use.

73.  The Plaintiff had the duty, as product sellers, to exercise reasonable care for the

Schmidt

safety of the Plaintiff.

74.    These duties included the responsibility for the following safety and health matters

relating to Vioxx:

    a. the investigation of the health risks;

    b. writing and publishing adequate and timely precautionary product labels

and other health and safety information;

    c. writing and publishing adequate and timely specifications and standards

about the true risks of injury associated with the products;

    d. writing and publishing adequate and timely specifications and standards

about the symptoms of such injuries

    e. writing and publishing adequate and timely specifications and standards

about the scope of such injuries

    f. writing and publishing adequate and timely specifications and standards

about the severity of the known risks associated with the products.

75.    The Defendant knew, or in the exercise of reasonable care should have known,

that Vioxx would cause adverse cardiovascular effects to its consumers like the Plaintiff.

76.    The Defendant breached its duty of reasonable care to the Plaintiff and was

negligent, without regard to whether the acts were intentional, knowing, malicious, or

reckless.

77.    Defendant's negligent acts and omissions were the direct and proximate causes of

the occurrence in question and Plaintiff's injuries and damages.

    WHEREFORE, Plaintiff prays for judgment against Defendant in a sum in excess

Schmidt
_____
Page 27 of 54

of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for Plaintiff's costs herein expended.

## COUNT 4 - BREACH OF WARRANTIES (EXPRESS and IMPLIED)

### AGAINST MERCK

COMES NOW Plaintiff and for Count Four of the Complaint against Defendant Merck, alleges:

78.    The Plaintiff re- alleges and incorporates the foregoing allegations.

79.    Merck through descriptions, affirmations of fact, and promises relating to their Vioxx drugs to the FDA, prescribing physicians, and the general public, including the Plaintiff, expressly warranted that Vioxx was both safe and efficacious for its intended use.

80.    These warranties came in the form of:

a.    Publicly made written and verbal assurances of the safety and efficacy of Vioxx by Merck;

b.    Press releases, interviews and dissemination via the media of promotional information, for the sole purpose of which was to create an increased demand for Vioxx, which failed to warn of the risks inherent to the ingestion of Vioxx;

c.    Verbal assurances made by Merck regarding Vioxx and the downplaying of any risk associated with the drug;

d.    False and misleading written information, supplied by Merck, and published in the Physician's Desk Reference on an annual basis, upon which physicians were forced to rely in prescribing Vioxx during the period of Plaintiff's ingestion of Vioxx

Schmidt

including, but not limited to, information relating the recommended duration of the use of the drugs;

      e.   Promotional pamphlets and brochures published and distributed by Merck and marketed directly to consumers, which contradicted the information that was set forth in the package insert and the Physician's Desk Reference; and

      f. Advertisements, including but not limited to direct to consumer advertising.

81.    The documents referred to above were created by and at the direction of Defendant.

82.    At the time of these express warranties, Merck had knowledge of the purpose for which Vioxx was to be used and warranted it to be in all aspects safe, effective and proper for such purpose, when indeed it was not.

83.    Merck knew and had reason to know that Vioxx did not conform to these express representations in that Vioxx is neither safe nor as effective as represented, and that Vioxx produces serious adverse side effects.

84.    As such, Merck's products were neither in conformity to the promises, descriptions or affirmations of fact made about Vioxx nor adequately contained, packaged, labeled or fit for the ordinary purpose for which these goods were sold and used.

85.    Merck breached these express warranties to Plaintiff in violation of the applicable provisions of the Uniform Commercial Code by:

Schmidt

a.   Manufacturing, marketing, packaging, labeling and selling Vioxx to Plaintiff in such a way that misstated the risks of injury, without warning or disclosure thereof by package or label of such risks to the Plaintiff or the prescribing physicians or pharmacist, and without modifying or excluding such express warranties;

b.   manufacturing, marketing, packaging, labeling, advertising and selling Vioxx to Plaintiff, which failed to counteract the negative health effects and increased risks in a safe and permanent manner; and

c.   manufacturing, marketing, packaging, labeling, advertising, promoting and selling Vioxx to Plaintiff, thereby causing the increased risk of serious physical injury and death, pain and suffering.

86.   Merck was or should have been in possession of evidence demonstrating that Vioxx causes serious side effects. Nevertheless, Merck continued to market Vioxx by providing false and misleading information without regard to the safety and efficacy of Vioxx.

87.   Merck's actions, as described above, were performed willfully, intentionally and with reckless disregard for the rights of Plaintiff and the public.

WHEREFORE, Plaintiff prays for judgment against Defendant in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for Plaintiff's costs herein expended.

## COUNT 5 COMMON LAW FRAUD- AGAINST MERCK

COMES NOW Plaintiff and for Count Five of the Complaint against Defendant Merck, alleges:

88.     Plaintiff re-alleges and incorporates the foregoing allegations.

89.     Merck, at all relevant times, made false representations and omissions to Plaintiff and other members of the public, including but not limited to, that Vioxx was safe, had been adequately tested to determine safety, and did not present life-threatening dangers.

90.     These representations and omissions, as set forth in the above paragraphs, were false. The true facts were that Vioxx were not safe, had not been adequately tested, and had dangerous and life-threatening side effects.

91.     When Merck made the representations, it knew them to be false, and said representations were made by Merck with the intent to deceive Plaintiff and/or Plaintiff's prescribing physicians and with the intent to induce plaintiff to use the Vioxx manufactured by Merck.

92.     Plaintiff and/or Plaintiff's physicians reasonably relying upon the false representations and omissions, Plaintiff's physicians prescribed Vioxx, Plaintiff used Vioxx. Plaintiff would not have done so if Plaintiff had known the true facts. In using Vioxx, Plaintiff exercised ordinary care.

93.     As a direct and proximate result of the aforesaid fraudulent conduct, Merck caused Plaintiff to suffer the damages and injuries herein alleged.

WHEREFORE, Plaintiff prays for judgment against Defendant in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for Plaintiff's costs herein expended.

## COUNT 6- NEGLIGENT MISREPRESENTATION – AGAINST MERCK

COMES NOW Plaintiff and for Count Six of the Complaint against Defendant

Schmidt

Page 31 of  54

Merck, alleges:

94. The Plaintiff re-alleges and incorporates the foregoing allegations.

95. Merck misrepresented to Plaintiff and/or Plaintiff's treating physicians the potential serious cardiovascular findings that were observed in the VIGOR study, minimized the Vioxx/Coumadin drug interaction, omitted crucial risk information associated with Vioxx, misrepresented Vioxx safety profile and represented that Vioxx was safe, and that any cardiovascular and/or cardio thrombotic side effects were not associated with the drug.

96. These representations were made with the actual knowledge of Merck.

97. The representations set forth *supra* were material to Plaintiff and/or Plaintiff's treating physician to prescribe and maintain Plaintiff's prescription of Vioxx.

98. The representations were made either without knowing of the truth or falsity of the representations or knew or should have known that the representations being made were false and, therefore, Defendant failed to exercise reasonable care in making the representations in the scope and course of their employment in marketing Vioxx to individual consumers, Plaintiff's treating physicians, hospitals, and other health care providers.

99. Merck intended for Plaintiff and/or Plaintiff's treating physicians to rely upon the material misrepresentations to induce them to initially prescribe Vioxx and continue Plaintiff on Vioxx.

100. Plaintiff justifiably relied on the representations which were made directly to Plaintiff or Plaintiff's treating physicians, with Merck knowing that Plaintiff was in a

Schmidt

Page 32 of 54

limited group who Merck knew would rely upon the information.

101.    As a direct result of Merck's negligent misrepresentation, personal injuries and
actual damages in an amount to be proved at trial. The negligent misrepresentations
caused or substantially contributed to cause Plaintiff's damages.

WHEREFORE, Plaintiff prays for judgment against Defendant in a sum in excess
of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and
reasonable under the circumstances and for Plaintiff's costs herein expended.

### COUNT 7-DECEPTIVE TRADE PRACTICES ACT- AGAINST MERCK

COMES NOW Plaintiff and for Count Seven of the Complaint against Defendant
Merck, alleges:

102.    The Plaintiff re-alleges and incorporates all the foregoing allegations.

103.    Plaintiff brings this action pursuant to 815 ILCS 505, et seq. (The Illinois
Consumer Fraud and Deceptive Practices Act), in that Plaintiff purchased and used Vioxx
for Plaintiff's personal use and thereby suffered ascertainable loss as a result of Merck's
actions in violation of the Illinois consumer fraud statute.

104.    Unfair or deceptive acts or practices are defined and declared unlawful in Illinois.
The unfair or deceptive acts or practices as defined in the statute include, "the use of any
deception, fraud, false pretense, false promise, misrepresentation or concealment,
suppression or omission of any material fact . . . in the conduct of any trade or
commerce."

105.    Merck violated the Act by its use of false and misleading misrepresentations or
omissions of material fact in connection with the sale of Vioxx. Merck communicated the

Schmidt
___
Page 33 of 54

purported benefits of Vioxx, while failing to disclose the serious and dangerous side effects related to the use of its product, and in fact actually concealing from health care providers the adverse cardiovascular effects of Vioxx.

106.    In this regard, Merck, including but not limited to, created a "dodgeball Vioxx" training package for its sales force, which instructed the individual Defendants named in this count to duck doctors and health care providers' questions about Vioxx's possible cardiovascular side effects. Merck's sales representations followed its instructions and concealed, omitted, and suppressed these material facts when making sales calls to health care providers.

107.    As a result of violating the Illinois consumer fraud statute, Merck is liable to Plaintiff for actual damages, costs and reasonable attorneys' fees, and for such additional relief as the Court may deem appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendant in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for Plaintiff's costs herein expended.

## II.  ALLEGATIONS AS TO BEXTRA

## BACKGROUND-BEXTRA

108.    This action arises from the sale and distribution of Bextra (Valdecoxib). Bextra is the brand name used by Defendant Pfizer to market and distribute Valdecoxib. Bextra has been proven to cause adverse cardiovascular effects including, but not limited to, heart attack and stroke.

109.    Pfizer during all the times mentioned herein has been engaged in the business of

Schmidt

Page 34 of 54

research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, inspecting, distributing, marketing, labeling, promoting, packaging and advertising of the prescription drug known as Bextra for ingestion by consumers. Bextra was manufactured, sold, designed, supplied, prescribed, distributed, marketed and processed by Defendant, who was at all times acting through their servants, employees, representatives and agents, who placed Bextra in the market to be purchased and used by the public.

110.   Pfizer participated in, authorized and directed the production and promotion of Bextra when they knew, or with the exercise of reasonable care, should have known, of the hazards and dangerous propensities of Bextra and thereby actively participated in the tortious conduct which resulted in the injuries suffered by the Plaintiff.

111.   Pfizer obtained FDA approval for Bextra on November 19, 2001, for treatment of musculoskeletal joint pain associated with osteoarthritis, among other maladies. Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. Pfizer aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. Pfizer did this to increase sales and profits.

112.   At all times relevant hereto, Pfizer actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by this product. Pfizer's conduct exhibits such an entire want of care as to establish that their

actions were a result of fraud, ill-will, recklessness, gross negligence or willful and intentional disregard to the consumers' rights.

113.   Plaintiff, LAURENCE SCHMIDT received a prescription for Bextra. Plaintiff took the drug as prescribed by a medical professional for approximately three months, and suffered a heart attack, stroke and cardiovascular injuries due to clotting or thrombosis. Plaintiff's use of Bextra was the direct and proximate cause of the occurrence in question and the injuries at issue, and/or contributed to cause the injuries at issue.

114.   The damages sought herein are the direct and proximate result of Pfizer's wrongful conduct in connection with designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the prescription drug Bextra (Valdecoxib).

115.   At all times relevant hereto, Pfizer was engaged in the business of designing, testing, inspecting, manufacturing, assembling, developing, labeling, sterilizing, licensing, marketing, advertising, promoting, selling, packaging, supplying and/or distributing the pharmaceutical drug Bextra (Valdecoxib) throughout the United States.

116.  Had Pfizer properly disclosed the risks associated with using Bextra (Valdecoxib), Plaintiff would not have taken it for treatment of pain.

117.   Plaintiff did not know of and did not even have the opportunity to know the potential connection between the use of Bextra (Valdecoxib) and Plaintiff injury until after the FDA issued its recommendation, on April 7, 2005, that Bextra (Valdecoxib) be required to include a black box warning.

118.   At all relevant times, Plaintiff was ignorant of the dangerous nature of Bextra, and the adverse cardiovascular effects that could occur due to consumption of and exposure to

Schmidt

Bextra.

## COUNT 8-COMMON LAW STRICT LIABILITY-

### AGAINST PFIZER

COMES NOW Plaintiff and for Count Eight of the complaint against Defendant

Pfizer alleges:

119.    The Plaintiff re-alleges and incorporates the foregoing allegations.

120.    In addition to pleading negligence, Plaintiff pleads the doctrine of strict liability.

Defendant is strictly liable to Plaintiff under Section 402A, Restatement (Second) of

Torts, for the defective design of the Bextra. At the time Bextra was designed,

manufactured and sold by said Defendant, safer alternative designs existed, which

included designs other than those actually used, that had they been selected by said

Defendant, would have prevented or significantly reduced the likelihood of Plaintiff's

injuries, and such designs were both economically and technologically feasible at the time

these products left the possession of said Defendant, and had they been used, would have

not have impaired the utility of the product. Defendant's defectively designed drug was a

producing cause of the occurrence in question and Plaintiff's injuries.

121.    Defendant is strictly liable to Plaintiff under Section 402A, Restatement (Second)

of Torts, for the defective marketing of Bextra. Defendant failed to provide adequate

warnings and instructions for safe use of Bextra. Defendant's defectively marketed drug

was a producing cause of the occurrence in question and Plaintiff's injuries.

122.    Defendant Pfizer is also strictly liable to Plaintiff under Section 402B of the

Restatement (Second) of Torts in misrepresenting to the public that its product was safe

and without defect, which statement and representation was false and involved a material

Schmidt

Page 37 of 54

fact concerning the character of quality of the product in question, and upon which representations the consumer constructively relied, and which constituted a producing cause of the injury at issue.

123.    Further, each of the above and foregoing acts or omissions of Defendant were more than momentary thoughtlessness, inadvertence, or error of judgment. Such acts or omissions constituted such entire want of care as to establish that the acts or omissions were the result of actual conscious indifference to the rights, safety, or welfare of the person or persons affected.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

### COUNT 9–STRICT PRODUCTS LIABILITY

### FAILURE TO WARN:

### AGAINST PFIZER

COMES NOW Plaintiff and for Count Nine against Defendant Pfizer alleges:

124.    Plaintiff incorporates all allegations in the preceding paragraphs as if fully set forth in this Count.

125.    he Bextra manufactured and supplied by Pfizer was unaccompanied by proper and adequate warnings regarding all adverse side effects associated with the use of Bextra, and the comparative severity and duration of the adverse effects.  The warnings given by Pfizer did not accurately reflect the symptoms, type, scope or severity of the side effects.

126.    Pfizer failed to perform adequate testing, analysis and studies prior to marketing

Bextra. Such adequate testing, study or analysis would have shown that Bextra possessed serious life threatening side effects, with respect to which full and proper warnings accurately and fully reflecting symptoms, type of illness, scope and severity should have been given with respect to the use of Bextra.

127.    Pfizer also failed to act properly on adverse reports it received about Bextra, and failed to properly study Bextra pre-market as well as post market and analyze and follow up on its studies.

128.    Pfizer also failed to effectively warn users and physicians that numerous other methods of pain relievers, including Ibuprofen, Naproxen, and/or Mobic were safer.

129.    Pfizer failed to give adequate post-marketing warnings or instructions for the use of Bextra because after Pfizer knew or should have known of the risk of injury from Bextra use, Pfizer failed to provide adequate warnings to users or consumers and continued to aggressively promote the product to doctors, hospitals, and directly to consumers.

130.    As a direct and proximate result of Defendants' failure to warn of the potentially severe side effects of the Bextra products, as well as the other conduct mentioned in this Count, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

## COUNT 10- NEGLIGENCE AND GROSS NEGLIGENCE-
## AGAINST PFIZER

COMES NOW Plaintiff and for Count Ten of the complaint against Defendant

Schmidt

Page 39 of 54

Pfizer, alleges:

131. The Plaintiff re-alleges and incorporates the foregoing allegations.

132. Plaintiff would further show that at all times material hereto, the manufacture, sale, design, supply, distribution, or prescription of Bextra with which Plaintiff came in contact, was under the exclusive control of the Defendant, their agents, servants and employees, and that had the Defendant herein not been guilty of negligence, the Plaintiff would not have sustained Plaintiff's injuries. Accordingly, the Plaintiff is entitled to recover from the Defendant under the doctrine of res ipsa loquitur.

133. The law imposed a duty on the Defendant, as a manufacturer and marketer of pharmaceutical drugs, to exercise reasonable care. The Defendant knew, or in the exercise of ordinary or reasonable care ought to have known, that Bextra it manufactured, sold, designed, supplied, distributed, promoted, or marketed was dangerous, unsafe, and highly harmful to Plaintiff's health, notwithstanding which:

     a.     Defendant negligently failed to design a reasonably safe product;

     b.     Defendant negligently placed Bextra into the market;

     c.     Defendant negligently failed to remove Bextra from the market;

     d.     Defendant negligently failed to fund and conduct medical and scientific studies to determine the risks of the overall safety of Bextra, in the alternative, failed to heed the warnings and risks of Bextra;

     e.     Defendant negligently failed to conduct sufficient testing on Bextra that would have shown Bextra had serious side effects, including, but not limited to the cardiovascular events described above;

     f.     Defendant negligently failed to conduct adequate post-marketing

Schmidt

Page 40 of 54

surveillance to determine the overall safety of Bextra;

        g.     Defendant negligently failed to accurately disclose the results of

their post-marketing surveillance to advise the Plaintiff, consumers, and the medical

community of the aforementioned risks to individuals when the drugs were ingested;

        h.     Defendant negligently failed to investigate the adverse event

reports relating to Bextra;

        i.     Defendant negligently marketed their products;

        j.     Defendant negligently failed to provide Plaintiff with visible,

understandable warnings that were adequate to convey and alert Plaintiff the severity of

the risks and serious thrombotic cardiovascular side effects of Bextra ingestion;

        k.     Defendant negligently failed to take any reasonable precautions or

exercise reasonable care to warn Plaintiff of the potential risks and serious thrombotic and

cardiovascular side effects of Bextra ingestion;

        l.     Defendant negligently failed to take any reasonable precautions or

exercise reasonable care to warn Plaintiff's health care providers of the potential risks and

serious thrombotic and cardiovascular side effects of Bextra ingestion;

        m.     Defendant negligently failed to take any reasonable precautions

or exercise reasonable care to warn the health care industry of the potential risks and

serious thrombotic and cardiovascular side effects of Bextra ingestion.

        n.     Defendant negligently failed to provide adequate post-marketing

warnings or instructions after the Defendant knew or should have known of the significant

risks of personal injury and death as identified herein among other serious side effects

Schmidt

Page 41 of 54

from the use of Bextra;

        o.    Defendant negligently failed to warn Plaintiff that Bextra should not be used in conjunction with any risk factors for these adverse events such as a family history of ischemic heart disease, or risk factors for ischemic cardiovascular disease; and,

        p.    Defendant negligently failed to warn Plaintiff that they undertook the risk of adverse events and death relating to Bextra as described herein.

134.    The Defendant's acts of negligence, as described above but not limited to these specific acts, proximately caused the Plaintiff's injuries and the occurrence in question.

    WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

## COUNT 11- NEGLIGENCE- SALE OF PRODUCT-
## AGAINST PFIZER

    COMES NOW Plaintiff and for Count Eleven of the Complaint against Defendant Pfizer, alleges:

135.    The Plaintiff re-alleges and incorporates the foregoing allegations.

136.    Defendant, during some or all relevant times, manufactured, sold, marketed, and/or distributed Bextra that was supplied to the Plaintiff for use.

137.    The Defendants had the duty, as product sellers, to exercise reasonable care for the safety of the Plaintiff.

138.    These duties included the responsibility for the following safety and health matters relating to Bextra:

Schmidt

Page 42 of 54

a. the investigation of the health risks;

b. writing and publishing adequate and timely precautionary product labels and other health and safety information;

c. writing and publishing adequate and timely specifications and standards about the true risks of injury associated with the products;

d. writing and publishing adequate and timely specifications and standards about the symptoms of such injuries

e. writing and publishing adequate and timely specifications and standards about the scope of such injuries

f. writing and publishing adequate and timely specifications and standards about the severity of the known risks associated with the products.

139.    The Defendant knew, or in the exercise of reasonable care should have known, that Bextra would cause adverse cardiovascular effects to its consumers like the Plaintiff.

140.    Defendant's negligent acts and omissions were the direct and proximate causes of the occurrence in question and Plaintiff's injuries and damages.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

## COUNT 12 - BREACH OF WARRANTIES (EXPRESS and IMPLIED)

## AGAINST PFIZER

COMES NOW Plaintiff and for Count Twelve of the Complaint against Defendant Pfizer, alleges:

141.    The Plaintiff re-alleges and incorporates the foregoing allegations.

· Schmidt

142.     Pfizer through descriptions, affirmations of fact, and promises relating to their Bextra drugs to the FDA, prescribing physicians, and the general public, including the Plaintiff, expressly warranted that Bextra was both safe and efficacious for its intended use.

143.     These warranties came in the form of:

          a.     Publicly made written and verbal assurances of the safety and efficacy of Bextra by Pfizer;

          b.     Press releases, interviews and dissemination via the media of promotional information, for the sole purpose of which was to create an increased demand for Bextra, which failed to warn of the risks inherent to the ingestion of Bextra;

          c.     Verbal assurances made by Pfizer regarding Bextra and the downplaying of any risk associated with the drug;

          d.     False and misleading written information, supplied by Pfizer, and published in the Physician's Desk Reference on an annual basis, upon which physicians were forced to rely in prescribing Bextra during the period of Plaintiff's ingestion of Bextra including, but not limited to, information relating to the recommended duration of the use of the drugs;

          e.     Promotional pamphlets and brochures published and distributed by Pfizer and marketed directly to consumers, which contradicted the information that was set forth in the package insert and the Physician's Desk Reference; and

          f.     Advertisements, including but not limited to direct to consumer advertising.

144.     The documents referred to above were created by and at the direction of Defendant.

Schmidt

Page 44 of 54

145.    At the time of these express warranties, Pfizer had knowledge of the purpose for which Bextra was to be used and warranted it to be in all aspects safe, effective and proper for such purpose, when indeed it was not.

146.    Pfizer knew and had reason to know that Bextra did not conform to these express representations in that Bextra is neither safe nor as effective as represented, and that Bextra produces serious adverse side effects.

147.    As such, Pfizer's products were neither in conformity to the promises, descriptions or affirmations of fact made about Bextra nor adequately contained, packaged, labeled or fit for the ordinary purpose for which these goods were sold and used.

149.    Pfizer breached these express warranties to Plaintiff in violation of the applicable provisions of the Uniform Commercial Code by:

      a.    manufacturing, marketing, packaging, labeling and selling Bextra to Plaintiff in such a way that misstated the risks of injury, without warning or disclosure

thereof by package or label of such risks to the Plaintiff or the prescribing physicians or pharmacist, and without modifying or excluding such express warranties;

      b.    manufacturing, marketing, packaging, labeling, advertising and selling Bextra to Plaintiff, which failed to counteract the negative health effects and increased risks in a safe and permanent manner; and

      c.    manufacturing, marketing, packaging, labeling, advertising, promoting and selling Bextra to Plaintiff, thereby causing the increased risk of serious physical injury and death, pain and suffering.

150.    Pfizer was or should have been in possession of evidence demonstrating that Bextra causes serious side effects. Nevertheless, Pfizer continued to market Bextra by

Schmidt

providing false and misleading information without regard to the safety and efficacy of Bextra.

151. Pfizer's actions, as described above, were performed willfully, intentionally and with reckless disregard for the rights of Plaintiff and the public.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

## COUNT 13-COMMON LAW FRAUD- AGAINST PFIZER

COMES NOW Plaintiff and for Count Thirteen of the Complaint against Defendant Pfizer, alleges:

152. Plaintiff re-alleges and incorporates the foregoing allegations.

153. Pfizer, at all relevant times, made false representations and omissions to Plaintiff and other members of the public, including but not limited to, that Bextra was safe, had been adequately tested to determine safety, and did not present life-threatening dangers.

154. These representations and omissions, as set forth in the above paragraphs, were false. The true facts were that Bextra was not safe, had not been adequately tested, and had dangerous and life-threatening side effects.

155. When Pfizer made the representations, it knew them to be false, and said representations were made by Pfizer with the intent to deceive Plaintiff and/or Plaintiff's prescribing physicians and with the intent to induce plaintiff to use the Bextra manufactured by Pfizer.

156. Plaintiff and/or Plaintiff's physicians reasonably relying upon the false representations and omissions, Plaintiff's physicians prescribed Bextra, plaintiff used

Schmidt

Page 46 of 54

Bextra. Plaintiff would not have done so if he had known the true facts. In using Bextra, Plaintiff exercised ordinary care.

157.    As a direct and proximate result of the aforesaid fraudulent conduct, Pfizer caused Plaintiff to suffer the damages and injuries herein alleged.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

### COUNT 14- NEGLIGENT MISREPRESENTATION – AGAINST PFIZER

COMES NOW Plaintiff and for Count Fourteen of the Complaint against Defendant Pfizer, alleges:

158.    The Plaintiff re-alleges and incorporates the foregoing allegations.

159.    At all relevant times, Pfizer knew, or should have known, that there were dangerous side effects resulting from the ingestion of Bextra (Valdecoxib).

160.    Pfizer knew or reasonably should have known that consumers such as Plaintiff would not have known about the increased of heart attack associated with the injection of Bextra (Valdecoxib).

161.    Pfizer, armed with the knowledge stated in the preceding two paragraphs, preceded with the design, production, manufacture, promotion, advertising, and sale of Bextra (Valdecoxib) without adequate warning of the side effects and dangerous risks to the consuming public including Plaintiff.

162.    The representations were made either without knowing of the truth or falsity of the representations or knew or should have known that the representations being made were false and, therefore, Defendant failed to exercise reasonable care in making the

Schmidt

representations in the scope and course of their employment in marketing Bextra to

individual consumers, Plaintiff's treating physicians, hospitals, and other health care

providers.

163.    Pfizer intended for Plaintiff and/or Plaintiff's treating physicians to rely upon the

material misrepresentations to induce them to initially prescribe Bextra and continue

Plaintiff on Bextra.

164.    Plaintiff justifiably relied on the representations which were made directly to

Plaintiff or Plaintiff's treating physicians, with Pfizer knowing that Plaintiff was in a

limited group who Pfizer knew would rely upon the information.

165.    As a direct result of Pfizer's negligent misrepresentation, personal injuries and

actual damages in an amount to be proved at trial.  The negligent misrepresentations

caused or substantially contributed to cause Plaintiff's damages.

WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in

excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and

reasonable under the circumstances and for their costs herein expended.

### COUNT 15-DECEPTIVE TRADE PRACTICES ACT- AGAINST PFIZER

COMES NOW Plaintiff and for Count Fifteen of the complaint against Defendant

Pfizer, alleges:

166.    The Plaintiff re-alleges and incorporates all the foregoing allegations.

167.    Plaintiff brings this action pursuant to 815 ILCS 505, et seq. (The Illinois

Consumer Fraud and Deceptive Practices Act), in that he purchased and used Bextra for

Plaintiff's personal use and thereby suffered ascertainable loss as a result of Pfizer's

actions in violation of the Illinois consumer fraud statute.

Schmidt

168.    Unfair or deceptive acts or practices are defined and declared unlawful in Illinois. The unfair or deceptive acts or practices as defined in the statute include, "the use of any deception, fraud, false pretense, false promise, misrepresentation or concealment, suppression or omission of any material fact . . . in the conduct of any trade or commerce."

169.    Pfizer violated the Act by its use of false and misleading misrepresentations or omissions of material fact in connection with the sale of Bextra. Pfizer communicated the purported benefits of Bextra, while failing to disclose the serious and dangerous side effects related to the use of its product, and in fact actually concealing from health care providers the adverse cardiovascular effects of Bextra.

        WHEREFORE, Plaintiff prays for judgment against Defendant Pfizer in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for their costs herein expended.

## COUNT 16- STRICT PRODUCTS LIABILITY/ SALE OF DEFECTIVE PRODUCT- AGAINST WALGREENS

        COMES NOW, Plaintiff and for Count Sixteen of the Complaint against Defendant Walgreens, alleges:

170.    The Plaintiff re-alleges and incorporates the foregoing allegations.

171.    The Vioxx sold by Walgreens was defective and unreasonably dangerous when sold, and unaccompanied by proper and adequate warnings regarding all possible adverse side effects associated with the use of Vioxx and Bextra, and the comparative severity and duration of the adverse effects. The warnings accompanying the Vioxx and Bextra did not accurately reflect the symptoms, type, scope or severity of the side effects. Walgreens knew or should have known of these side effects due to the FDA sanctioning Merck for its

Schmidt

Page 49 of 54

misleading advertising and Dear Doctor letters Merck was required by the FDA to send, as well as other information available to a prudently informed seller of Vioxx and Bextra.

172. Alternatively, the warnings provided by Merck and Pfizer to plaintiff's physician were inadequate, as set out above, to have allowed plaintiff's physician to have provided plaintiff with information about the known dangerous propensity of Vioxx and Bextra to cause heart attacks and stroke.

173. Since plaintiff's physicians were unable to provide an adequate warning to Plaintiff, Walgreens had a duty to warn plaintiff that taking Vioxx and Bextra could cause a heart attack or stroke.

174. The Vioxx and Bextra sold to Plaintiff was unaccompanied by a warning to Plaintiff that numerous other methods of pain relievers, including but not limited to Ibuprofen and/or Mobic were safer.

175. Further, knowing plaintiff's health history, Walgreens sold Plaintiff Vioxx and Bextra without warning Plaintiff that taking Vioxx and Bextra was not advisable or indicated for Plaintiff.

176. As a direct and proximate result of Walgreens selling a defective product, plaintiff suffered a heart attack and it is strictly liable for the damages the Vioxx and Bextra caused Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for Plaintiff's costs herein expended.

## COUNT 17- NEGLIGENCE, FAILURE TO WARN- AGAINST WALGREENS

COMES NOW Plaintiff and for Count Seventeen of the Complaint against

Schmidt

Defendant Walgreens, alleges:

177.    The Plaintiff re-alleges and incorporates the foregoing allegations.

178.    Walgreens owed a duty to warn of any dangerous defects or side effects; a duty to assure the product it sells did not cause users unreasonable and dangerous risks, reactions, and side effects; and a duty to provide adequate post sale warnings as it learned of Vioxx's substantial dangers.

179.    Walgreens knew or should have know that Vioxx and Bextra caused unreasonably dangerous risks and serious side effects of which the general public would not be aware, including but not limited to the FDA sanctions of Merck, the Dear Doctor letters Merck sent to doctors and other health care providers, and the medical literature regarding Vioxx and Bextra. Walgreens nevertheless sold Vioxx and Bextra without adequate warnings of the dangerousness of Vioxx and Bextra and knowing that there were safer methods and products for pain control.

180.    Walgreens negligent making to warn of the cardiovascular risks associated with the use of Vioxx and Bextra is not within the scope of the Healing Arts Malpractice Act as Walgreens duty to provide accurate information regarding cardiovascular risks once Walgreens has undertaken to provide information about these risks is within the grasp of the ordinary lay juror, is not inherently one of medical judgment and will be established on the basis of Walgreens administrative policies regarding information provided to patients receiving Vioxx and Bextra.

181.    Walgreens breached its duty of reasonable care to Plaintiff in that it failed to:

a.    Warn that Vioxx and Bextra had serious side effects, including heart

Schmidt

Page 51 of 54

attacks, strokes, hypertension, atherosclerosis, blood clots, ulcers, and others, and warn users of those risks which Defendants knew or should have known; and/or

    b.    Include adequate warnings with Vioxx and Bextra that would alert users to the potential risks and serious side effects of the drugs which Walgreens knew or should have known of; and/or

    c.    Warn Plaintiff that use of Vioxx and Bextra carried a risk of death or permanent disability from heart attack, strokes, blood clots, ulcers, and other cardiovascular disorders and other serious side effects which Walgreens knew or should have known of; and/or

    d.    Other appropriate warnings.

182.    As a direct and proximate result of Walgreens' negligence and breaches of its duty of reasonable care, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays for judgment against Defendant in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for Plaintiff's costs herein expended.

## COUNT 18- BREACH OF WARRANTY- AGAINST WALGREENS

COMES NOW Plaintiff and for Count Eighteen of the Complaint against Defendant Walgreens, alleges:

183.    The Plaintiff re-alleges and incorporates the foregoing allegations.

184.    Plaintiff purchased the defective and dangerous Vioxx and Bextra drugs from Walgreens in this County, pursuant to prescriptions from Plaintiff's physicians.

185.    In selling Vioxx and Bextra to Plaintiff, Walgreens expressly and impliedly warranted that Vioxx and Bextra was safe for its intended use, was free from

Schmidt

manufacturing or production defects, and would perform as indicated. Walgreens also expressly and impliedly warranted that Vioxx and Bextra caused no side effects other than those listed in the package insert.

186. Walgreens breached these warranties by selling to Plaintiff Vioxx and Bextra that was not of merchantable quality, was unsafe and whose potential side effects were substantially untested.

187. As a direct and proximate result of Walgreens' breach of express and implied warranties, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays for judgment against Defendant Merck in a sum in excess of Fifty Thousand Dollars ($50,000.00), for such other relief as may be fair and reasonable under the circumstances and for Plaintiff's costs herein expended.

## PRAYER FOR RELIEF AS TO ALL COUNTS

WHEREFORE, Plaintiff requests that this Court enter a judgment against the Defendant and in favor of the Plaintiff, and to award the following relief:

a. General damages in the sum in excess of the jurisdictional minimum of this Court;

b. Compensatory damages, including past, present, and future physical pain and suffering, loss of earning capacity, disfigurement, physical impairment, and medical care expenses;

c. Consequential Damages;

d. Costs including, but not limited to, discretionary Court costs of this cause, and those costs available under the law, as well as expert fees and attorney fees and expenses, and costs of this action; and,

Schmidt

e. Such other relief as the Court deems just and proper.

Respectfully submitted,

**GOLDENBERG HELLER ANTOGNOLI ROWLAND SHORT & GORI, P.C.**

By _____

**Robert D. Rowland #6198915**
**Aaron K. Dickey #6281731**
2227 S. State Route 157
P.O. Box 959
Edwardsville, IL 62025
618/656-5150 Telephone
618/656-6230 Facsimile

ATTORNEYS FOR PLAINTIFF